*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re DAVIS, Minors.

UNPUBLISHED
June 23, 2022

No. 358461
Calhoun Circuit Court
Family Division
LC No. 2015-002148-NA

Before: GLEICHER, C.J., and SAWYER and GARRETT, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor children, QD and VD, under MCL 712A.19b(3)(j). On appeal, father argues that the trial court erred when it determined that reasonable efforts had been made to reunify the family. We disagree and affirm.

## I. PRESERVATION AND STANDARD OF REVIEW

Generally, to preserve an issue for appellate review, a party must raise the issue before the trial court. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Arguing that his challenge to whether the DHHS made reasonable efforts to reunite the family is preserved, father represents that, during closing arguments at the termination trial, he requested more time and services. However, in *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000), this Court explained that "[t]he time for asserting the need for accommodation in services is when the court adopts a service plan, not at the time of a dispositional hearing to terminate parental rights." Accordingly, father's request for more time during closing arguments at the termination trial was insufficient to preserve his reasonable efforts argument. See *id*.

Generally, this Court reviews for clear error a trial court's finding that reasonable efforts were made to preserve and unify a family. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005).

> The clear-error standard controls our review of both the court's decision
> that clear and convincing evidence supported a ground for termination and that

-1-

termination served the children's best interests. Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake. In reviewing the circuit court's decision, we also must give due regard to the trial court's special opportunity to observe the witnesses. [*In re Dearmon*, 303 Mich App 684, 699-700; 847 NW2d 514 (2014) (quotation marks and citations omitted).]

However, this Court reviews for plain error affecting substantial rights unpreserved issues. *Utrera*, 281 Mich App at 8. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (quotation marks, citation, and alteration omitted).

Father contested termination throughout the trial court proceedings. Therefore, to the extent father challenges the trial court's findings on the statutory grounds for termination or whether termination was in the children's best interests, this claim of error is preserved. See *Utrera*, 281 Mich App at 8.

The trial court must find at least one of the statutory grounds for termination by clear and convincing evidence in order to terminate parental rights. *In re Gonzalez/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015). If this Court finds that the trial court did not clearly err as to the existence of one ground for termination, this Court need not address any additional termination grounds. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Additionally, "[e]ven if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *Gonzalez/Martinez*, 310 Mich App at 434.

## II. REASONABLE EFFORTS

The trial court did not plainly err when it found that the DHHS made reasonable efforts to reunify the family.

Generally, during the dispositional phase, the DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Hicks*, 500 Mich at 85-86. The case service plan must include, in relevant part, a schedule of services "to be provided to the parent, child, and if the child is to be placed in foster care, the foster parent, to facilitate the child's return to his or her home or to facilitate the child's permanent placement." MCL 712A.18f(3)(d); see also *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). The parent should be given a reasonable time to make changes and benefit from services before termination of parental rights. See *Mason*, 486 Mich

at 159. The trial court should regularly update the plan to account for the parent's progress and developing needs. *Id*. at 156.

The trial court did not plainly error when it found that reasonable efforts had been made to reunify the family. As the trial court found, this case did not "begin" in January 2019 when the children were removed. The older children had been removed from their home three times. Father and mother had an extensive history of involvement with Children's Protective Services dating back to 2015. When QD and the older children were returned to mother's care, QD was not returned to father because father was found to not have benefited from services. Father was offered parenting-time visits and drug screens, but his participation in these services was spotty at best. Although father reported attending individual counseling, Merridessa Katz, testifying as an expert in psychology, testified that she did not see how father had benefited from counseling, even after three removals. Caseworkers testified that father refused to participate in services.

Father's argument about the COVID-19 pandemic is without merit. Termination occurred in 2019. COVID-19 related shutdowns in our state first occurred in March 2020. *In re Certified Questions from the United States Dist Court*, 506 Mich 332, 338; 958 NW2d 1 (2020).

As discussed later, any error did not affect father's substantial rights because the record supported the trial court's findings on the statutory ground for termination and the children's best interests.

## III. STATUTORY GROUND

Although father makes no affirmative argument that the statutory grounds for termination were not met or that termination was not in the children's best interests, we have reviewed the record and are satisfied with the trial court's findings.

Father's parental rights were terminated pursuant to MCL 712A.19b(3)(j), which provides as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Termination of parental rights under MCL 712A.19b(3)(j) is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." See also *Gonzalez/Martinez*, 310 Mich App at 433-434. This statutory factor considers not only the harm that may result from the parent's conduct toward the child but also harm that might reasonably result from the parent's conduct around the child, such as exposing a child to individuals with criminal backgrounds who might

-3-

exploit the children or otherwise place them at risk. See *In re White*, 303 Mich App 701, 712; 846 NW2d 61 (2014). A parent's "lengthy period of instability" stemming from mental-health issues, combined with a present and "continuing lack of judgment, insight, and empathy" for a child is also relevant to this statutory ground. *Utrera*, 281 Mich App at 25. This Court has recognized that Subdivision (j) considers not only the prospect of physical harm, but also the risk of emotional harm. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Harm may also include the prospect that the parent's behavior would negatively influence the children. See *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012). The trial court must "scrutinize the likelihood of harm if the child were returned to the parent's home" at the conclusion of the child protective proceedings, not at that exact moment in time. See *In re Pops*, 315 Mich App 590, 600; 890 NW2d 902 (2016).

Record testimony properly supported the trial court's finding that the DHHS had met its burden on this statutory ground. Katz testified that father's psychological evaluation revealed that father had narcissistic tendencies, an inability to put the needs of the children ahead of his own, and a large need for control, which combined with his suppressed anger and volatility, potentially placed the children at risk of harm. Testimony reflected that the children were scared of father. Testimony reflected that at least one child witnessed father physically abusing mother. Testimony reflected that mother and father would argue and fight in front of the children to a degree that caused the children to hide in one of their closets. Testimony reflected that drugs were present in the home and that father consistently, when he tested, tested positive for controlled substances. Accordingly, the trial court did not clearly err when it found that the DHHS met its burden on this statutory ground.

## IV. BEST INTERESTS

"In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016) (quotation marks and citation omitted). "[T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home," are all factors for the court to consider when deciding whether termination is in the best interests of the child. *White*, 303 Mich App at 713. A child's placement with relatives is a factor that the trial court is required to consider. *Mason*, 486 Mich at 164; see MCL 712A.19a(6)(a). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714. On appeal, this Court places its focus on the child rather than the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

The trial court did not clearly err when it found that termination was in QD and VD's best interests. Even though QD was very young, this case was not his first removal. His older siblings had been removed three times. Father was found to not have benefited from services in those previous cases. Father had been accused of domestic violence, and at least one of the children reported seeing father physically abuse mother. The older children reported being afraid of father. The numerous removals the older children had faced without significant improvement from father

(or mother) in rectifying their consistent barriers reflected a sense that QD and VD would not know stability, permanence, or a sense of safety while in father's care. QD and VD were placed together in a preadoptive home, where they had experienced no developmental problems, despite VD being born positive for controlled substances.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Kristina Robinson Garrett